```
 1                  UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NORTH CAROLINA
 2                        EASTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,-   Docket No. 5:17-cr-265-FL-1
                              -
 5       Plaintiff,          -   New Bern, North Carolina
                              -   April 5, 2018
 6          v.               -   Sentencing
                              -
 7   JUSTIN COLE MILAM,       -
                              -
 8       Defendant.          -
     -------------------------------

 9

                   TRANSCRIPT OF SENTENCING HEARING
10          BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
                  UNITED STATES DISTRICT JUDGE.
11

     APPEARANCES:
12

     For the Plaintiffs:  United States Attorneys' Office
13                        By:  Ethan A. Ontjes
                          310 New Bern Avenue, Suite 800
14                        Raleigh, NC 27601
                          (919) 856-4500
15

     For the Defendant:  Manning Law Firm
16                        Thomas Courtland Manning
                          1312 Annapolis Drive
17                        Suite 201
                          Raleigh, NC 27608
18                        (919) 834-3499

19   Court Reporter:      Tracy L. McGurk, RMR, CRR
                          413 Middle St.
20                        New Bern, NC 28560
                          (419) 392-6626
21

22

23

24   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
25
```

1          (Commenced at 10:04 a.m.)

2          THE COURT:  Good morning.  We've had the

00:00:01  3  collapse of the morning calendar, so we just have one

00:00:04  4  case before us.  Are you ready?

00:00:08  5          MR. MANNING:  Yes, Your Honor.  Thank you.

00:00:11  6          THE COURT:  So this is a matter I continued

00:00:13  7  for 90 days upon Defendant's determination to obtain a

00:00:19  8  psychological assessment.  And I've reviewed this new

00:00:23  9  material.

00:00:24  10         Is there any motion made by the Government?

00:00:29  11  The motion of the Defendant, or the memorandum

00:00:32  12  highlights his cooperation.

00:00:34  13         MR. ONTJES:  Judge Flanagan, yes.  The

00:00:36  14  Government is not -- will not be making a motion today.

00:00:40  15  The Defendant was debriefed on two occasions by the case

00:00:44  16  agent; however, the information provided just did not

00:00:48  17  rise to the level of substantial assistance.  Therefore,

00:00:51  18  no motion will be made.

00:00:52  19         THE COURT:  Well, Mr. Manning, I'd be

00:00:54  20  pleased to hear you as to what sentence you think is

00:00:57  21  appropriate.

00:00:58  22         MR. MANNING:  Your Honor, we are requesting

00:01:02  23  a variant sentence, of course.  And briefly, I'm sure

00:01:08  24  Your Honor has read Dr. James' report.  That was one of

00:01:14  25  the questions that the Court had the last time.  And to

00:01:18   1   highlight the findings, the core of the assessment and

00:01:25   2   the psychological testing was contained on pages 8, 9,

00:01:29   3   and 10 of the report.  The parts of it that affirm or

00:01:38   4   confirm what I was arguing, without the benefit of this

00:01:42   5   material at the last hearing, was that page 8, mental

00:01:49   6   status, there's no evidence of thought or perceptual

00:01:52   7   disturbance.  His cognitive functioning is estimated to

00:01:56   8   be above average.  His insight into the nature of his

00:02:00   9   problems is good.

00:02:01   10   And the testing, the findings were that

00:02:06   11   there are no indications of over-reporting, which is

00:02:09   12   negative impression management, on the assessment.  In

00:02:13   13   regard to under-reporting, he presents himself as very

00:02:16   14   well adjusted.  The profile is devoid of evidence of

00:02:20   15   somatic, cognitive, emotional, thought, behavioral, or

00:02:24   16   interpretation dysfunction.  If there is evidence that

00:02:29   17   Mr. Milam does have dysfunction in one or more areas,

00:02:35   18   that will be reconciled with the presentation on the

00:02:38   19   assessment.  Diagnostics in the instrument that was

00:02:42   20   administered, there weren't any diagnostic or treatment

00:02:50   21   considerations offered.

00:02:52   22   In the recidivism area, the recidivism

00:02:55   23   assessment, she finds that when compared with other

00:03:01   24   sexual offenders, child pornography offenders tend to be

00:03:04   25   higher functioning and generally pro-social individuals.

00:03:09    1    Offenders with contact and noncontact sexual offenses

00:03:13    2    tend to have antisocial behaviors.  Lack of personality

00:03:16    3    characteristics may mitigate or reduce the likelihood of

00:03:19    4    contact offending.

00:03:22    5            In this case she concludes that Mr. Milam

00:03:25    6    doesn't demonstrate antisocial personality disorder,

00:03:29    7    traits, or characteristics based on her assessment.

00:03:36    8            The doctor's positive answers to six

00:03:41    9    questions which are generally asked.  There's no formal

00:03:45   10    DSM-5 diagnosis in this matter.  Had there been, the

00:03:53   11    thing closest from the assessment would be a DSM-5

00:03:56   12    diagnosis of pedophilia, which is not present here,

00:04:01   13    according to her findings.

00:04:02   14            Her treatment recommendations are down in

00:04:04   15    section 6.  The recommendation of the psychologist was

00:04:10   16    that he engage in sex offender treatment specifically

00:04:13   17    designated to address noncontact child pornography

00:04:17   18    offenses.  And she goes on to address those matters.

00:04:24   19            From my experience I understand that the sex

00:04:27   20    offender education programs within the Bureau of Prisons

00:04:31   21    address all of these and more of the characteristics

00:04:36   22    that need to be addressed with respect to psychological

00:04:40   23    and counseling treatment.

00:04:44   24            The final recommendation with respect to

00:04:47   25    intervention, Your Honor, was that when he's released

00:04:54  1  that his access to media be restricted until and if he

00:04:58  2  completes treatment successfully and upon the

00:05:01  3  recommendation of his provider and supervising officers.

00:05:05  4          So that a period of supervision perhaps

00:05:11  5  beyond the five year minimum might be indicated by the

00:05:14  6  findings in this report unless there's significant

00:05:19  7  plentiful evidence from his incarceration that would

00:05:22  8  tend to show that that would be either not necessary or

00:05:25  9  could be calculated differently upon release.

00:05:31  10         With respect to reoffending, Your Honor, in

00:05:34  11  Section 4 on page 10 of the report, there's always the

00:05:40  12  risk of reoffense, but in Mr. Milam's case, according to

00:05:45  13  her findings, that his offense has a low recidivism

00:05:50  14  rate.  That he's accepted responsibility for, and feels

00:05:54  15  guilt, shame, and remorse for what he's done.  That he

00:05:57  16  has not engaged in a contact sexual offense, and there

00:06:01  17  wasn't any indication that he has solicited anyone for a

00:06:06  18  contact sexual offense.  That he does have a very

00:06:10  19  supportive family and social community, many of whom are

00:06:17  20  here again today, and that speaks volumes.

00:06:22  21         Additionally, Your Honor, the additional

00:06:24  22  letters that we submitted last week, one of the

00:06:27  23  questions that the Court had in January was information

00:06:30  24  from his university.  And in the letters, in the second

00:06:38  25  set of letters, number 22 through 29 -- 27 is

| | | |
|---|---|---|
| 00:06:46 | 1 | unrelated -- all of those are letters from faculty |
| 00:06:51 | 2 | members, people who knew him during the three and a half |
| 00:06:54 | 3 | years he was at Liberty, across the spectrum of his -- |
| 00:06:58 | 4 | the education and also his dedication to his anticipated |
| 00:07:04 | 5 | and intended ministry in both music and worship which |
| 00:07:09 | 6 | was encouraged and noted in several of the letters |
| 00:07:12 | 7 | provided by his instructors, deans, and advisors.  Those |
| 00:07:17 | 8 | are echoed by the folks in his community in Wake County |
| 00:07:22 | 9 | and also in the pastors and assistant pastors and music |
| 00:07:28 | 10 | supervisors at the Latitude Church here in New Bern |
| 00:07:31 | 11 | where he interned several times, and from whom he's |
| 00:07:36 | 12 | drawn a tremendous amount of support. |
| 00:07:44 | 13 | Your Honor, quite frankly, there's always |
| 00:07:47 | 14 | a -- some tension, but there's also an intersection |
| 00:07:52 | 15 | between faith and law.  And here, Your Honor, the |
| 00:07:55 | 16 | statute -- our Congress has determined that although |
| 00:08:04 | 17 | treatment and rehabilitation are important and crucial |
| 00:08:11 | 18 | parts of punishment, the Congress has also in this |
| 00:08:15 | 19 | statute that, Your Honor, has to be considered, whether |
| 00:08:21 | 20 | or not there is complete rehabilitation, the Congress |
| 00:08:25 | 21 | has also mandated segregation from society as a critical |
| 00:08:29 | 22 | part of the punishment for violation of these offenses. |
| 00:08:35 | 23 | With respect to our request for a variance |
| 00:08:40 | 24 | in the sentence, Your Honor, the Court has tremendous |
| 00:08:43 | 25 | discretion here between what's in the Presentence Report |

00:08:46 1   and the guideline range, which is higher than the 360

00:08:52 2   that's the statutory maximum.  He was a level 43.  But

00:08:56 3   the Court has discretion, if supported by the record, to

00:09:03 4   impose a sentence below the recommended guideline range.

00:09:13 5           In drug addiction, alcohol addiction,

00:09:17 6   other -- I don't want to call them street-level

00:09:22 7   addictions, but the more common addictions we encounter,

00:09:25 8   these addictions, when caught early enough and treated

00:09:29 9   early enough, people can go and recover and successfully

00:09:36 10  continue to participate in society without necessarily

00:09:42 11  having to go through the intervention of segregation

00:09:45 12  from society.

00:09:46 13          In this case active punishment is a part of

00:09:51 14  this statutory scheme.  And I can't argue with it.  I

00:09:55 15  don't like it, but it's the law.

00:09:58 16          But with respect to what is necessary in

00:10:01 17  this case for this young man, I would say to the Court

00:10:07 18  that he has the psychological and emotional and

00:10:12 19  intellectual tools without any deficits in terms of

00:10:19 20  cognitive ability, memory, critical thinking; all of the

00:10:24 21  higher learning functions are present in him.  And but

00:10:30 22  for this addiction, which is what I'll call it,

00:10:35 23  sickness, other people could call it something else, but

00:10:38 24  with this one singular exception in his makeup, he's

00:10:44 25  ready to go into a life of his choosing.  But he can't

00:10:48 1   do that.

00:10:50 2          The question then becomes whether -- what is

00:10:54 3   necessary to protect the public, to make sure that he

00:10:58 4   doesn't reoffend, and what is necessary to the community

00:11:03 5   and society pursuant to the law to insure those things

00:11:08 6   that Your Honor must follow as the judge in this case,

00:11:14 7   balanced against what would be in the best interest of

00:11:18 8   society and this defendant.

00:11:22 9          My sincere belief is that he will learn,

00:11:29 10  even though he is convinced, and I believe him, that

00:11:36 11  through his reflection in the last 16 months and through

00:11:40 12  his faith, which has been exhibited from an early age

00:11:43 13  starting at the age of six, documented by everybody

00:11:47 14  that's known him, including the people who are here, he

00:11:50 15  has tremendous faith.  On the law side, I'm convinced,

00:11:57 16  even though he feels that he is done with pornography,

00:12:01 17  that because of his addiction, he can always assume and

00:12:08 18  gather additional tools in addition to his faith to

00:12:12 19  withstand the addiction, if and when he is ultimately

00:12:18 20  released back into society.

00:12:21 21         I believe that even though his current

00:12:24 22  conviction may be that he's done with this material,

00:12:28 23  he's going to be incarcerated, and I believe that he

00:12:32 24  sincerely understands and believes and will learn from

00:12:35 25  the education.  I don't think that he will be repelling

00:12:39  1   the lessons that are going to be given to him and the

00:12:44  2   tools that he'll be provided through counseling and

00:12:47  3   education and treatment while he's in custody.  And I

00:12:51  4   believe that when he comes through all of that, he will

00:12:55  5   be able to return and be a successful, productive

00:13:01  6   person.

00:13:03  7           I don't know that 30 years is necessary in

00:13:06  8   order to cement that conclusion and to insure that that

00:13:12  9   is the length of time that's necessary to make him

00:13:17  10  productive, particularly in considering that once he's

00:13:20  11  released, whatever sentence Your Honor imposes, he will

00:13:23  12  be under a minimum of five years supervised release or

00:13:26  13  longer, depending on the Court's discretion or what the

00:13:31  14  Court orders in that regard.

00:13:33  15          And so I would ask the Court to impose a

00:13:37  16  sentence below the statutory maximum in this matter

00:13:43  17  because I believe that he will be, whenever released,

00:13:51  18  will be a productive and contributing person.

00:14:01  19          THE COURT:  Okay.  Well, I cannot sentence

00:14:04  20  the Defendant by law to less than 15 years in prison,

00:14:07  21  nor can I sentence him to more than 30 years.  The

00:14:11  22  advice that I receive under the Sentencing Guidelines is

00:14:14  23  the Court should sentence your client to 30 years in

00:14:17  24  prison.

00:14:18  25          The total offense level is extremely high;

00:14:20  1   it's a 43.  It's driven in part by the age of the

00:14:25  2   children whose images are at issue, the manner and

00:14:30  3   method by which you distributed them, the fact that your

00:14:32  4   client enticed juveniles to make and distribute to him

00:14:36  5   child pornography, and the volume of materials at issue.

00:14:45  6          So the letters are helpful.  I thank you for

00:14:51  7   all of the information that's imparted to the Court by

00:14:56  8   your assembling them, including material from his

00:15:00  9   professors at Liberty.

00:15:03  10         At the end of the day I'm not sure how

00:15:06  11  helpful this psychological assessment is, but it

00:15:10  12  certainly does offer some additional insight into your

00:15:13  13  client.

00:15:17  14         There's a lot of moving parts to this case.

00:15:21  15         What says Mr. Ontjes?   What says the

00:15:24  16  Government?   It's a respectful request for a variance.

00:15:27  17         MR. ONTJES:  Yes, Your Honor.  Your Honor,

00:15:29  18  the United States does not believe a variance is

00:15:32  19  appropriate in this case.  We believe a guideline

00:15:35  20  sentence -- and I acknowledge it is a significant

00:15:40  21  sentence, but it is one that's warranted here based on

00:15:43  22  the totality of this case if you look at all the things,

00:15:47  23  and I know this Court has, that this Defendant has

00:15:50  24  engaged in over a two- to three-year period before being

00:15:58  25  uncoupled.  Because that's what this case is about,

00:16:00 1  Judge Flanagan.  This is a defendant who's been able to

00:16:03 2  conceal his activities from everyone.  And the doctor's

00:16:11 3  report to me screams out that he continues to conceal it

00:16:15 4  from himself.  He doesn't even acknowledge that he has

00:16:17 5  a problem.

00:16:18 6          THE COURT:  That's concerning.

00:16:19 7          MR. ONTJES:  It's very concerning, Judge

00:16:21 8  Flanagan, to the Government because this is someone who

00:16:23 9  I know --

00:16:23 10         THE COURT:  Well, he acknowledges he has a

00:16:25 11 problem --

00:16:26 12         MR. ONTJES:  But when he tells the examiner:

00:16:28 13 I don't need treatment --

00:16:29 14         THE COURT:  -- but he doesn't need

00:16:31 15 treatment.

00:16:31 16         MR. ONTJES:  "I've been away from it long

00:16:33 17 enough.  I promise, I'm not going back."

00:16:35 18         THE COURT:  Right.

00:16:35 19         MR. ONTJES:  Judge Flanagan, this Court has

00:16:38 20 done, I know, numerous cases and knows very well that

00:16:42 21 someone in his condition -- his attraction to young

00:16:45 22 children, and this Defendant had material as young as

00:16:49 23 babies, toddlers -- that is not someone who literally

00:16:55 24 just walks away because he's been separated from it due

00:16:59 25 to his incarceration.

| | | |
|---|---|---|
| 00:17:00 | 1 | So the United States has real concern for |
| 00:17:02 | 2 | the safety, number one, of the public, particularly the |
| 00:17:06 | 3 | children, of this Defendant being out when he is |
| 00:17:11 | 4 | ultimately released. |
| 00:17:13 | 5 | I will make the Court aware that the victims |
| 00:17:16 | 6 | in this case have been notified; however, none are here |
| 00:17:19 | 7 | today. |
| 00:17:20 | 8 | But we believe, Judge Flanagan, that a |
| 00:17:23 | 9 | guideline sentence -- and as I know this Court stated |
| 00:17:26 | 10 | already, but for the statutory max, his sentence would |
| 00:17:30 | 11 | be life.  His guideline sentence would be life, but for |
| 00:17:33 | 12 | the 360-month statutory max. |
| 00:17:38 | 13 | This is a Defendant, as I indicated, over a |
| 00:17:41 | 14 | several-year period by his own admission was |
| 00:17:43 | 15 | downloading, receiving, and trading child pornography; |
| 00:17:46 | 16 | actively seeking it, actively sending it out.  Over the |
| 00:17:52 | 17 | numbers as defined -- or described in paragraph 9, 117 |
| 00:17:57 | 18 | videos, 986 images were found on his computers.  The |
| 00:18:05 | 19 | Defendant's own admission is he deleted on several |
| 00:18:06 | 20 | occasions his collection before starting up again.  So |
| 00:18:09 | 21 | I'd submit to this Court this number, the number found, |
| 00:18:14 | 22 | is far below what he actually accumulated over this time |
| 00:18:17 | 23 | period during which he was actively seeking and |
| 00:18:20 | 24 | distributing this horrendous child pornography as |
| 00:18:23 | 25 | described. |

| | | |
|---|---|---|
| 00:18:23 | 1 | But, Judge Flanagan, going further, though, |
| 00:18:26 | 2 | in paragraph 10 -- and this brings up a huge concern for |
| 00:18:31 | 3 | the Government.  This Defendant was -- I completely |
| 00:18:34 | 4 | disagree with the doctor's conclusion on page 10 where |
| 00:18:39 | 5 | she indicates:  There is no indication he solicited |
| 00:18:42 | 6 | anyone for a contact sex offense. |
| 00:18:45 | 7 | That flatly goes against his own text |
| 00:18:48 | 8 | messages or messages between he and an individual in |
| 00:18:52 | 9 | Ohio during which they discussed molesting a |
| 00:18:55 | 10 | three-year-old child.  That the Defendant in his own |
| 00:18:59 | 11 | words on page 7 of the report, when asked about this |
| 00:19:05 | 12 | conversation, this chat messaging between he and the |
| 00:19:09 | 13 | individual in Ohio -- who, Judge Flanagan, has been |
| 00:19:11 | 14 | arrested and prosecuted for hands-on abuse of that |
| 00:19:14 | 15 | child -- that the Defendant stated, when asked why you |
| 00:19:17 | 16 | sent these statements:  I guess I wanted him to feel |
| 00:19:20 | 17 | okay.  I wanted him -- to make him feel okay.  I wanted |
| 00:19:24 | 18 | to make him rationalize what he was doing. |
| 00:19:27 | 19 | So this Defendant is not merely downloading, |
| 00:19:31 | 20 | distributing child pornography.  He is actually out |
| 00:19:34 | 21 | there and, I'd submit, grooming other individuals.  And |
| 00:19:37 | 22 | I acknowledge we don't have images of this defendant who |
| 00:19:40 | 23 | created children -- that he had hands-on contact with, |
| 00:19:46 | 24 | but he was grooming other individuals.  And we know of |
| 00:19:49 | 25 | three separate instances where he was discussing this |

| | | |
|---|---|---|
| 00:19:52 | 1 | with other people about how they could molest children |
| 00:19:57 | 2 | and then send him the images.  So this Defendant, while |
| 00:20:01 | 3 | I acknowledge was not in that room when this man in Ohio |
| 00:20:05 | 4 | molested this three-year-old child, he was the one |
| 00:20:08 | 5 | pushing it.  He was the one encouraging it, soliciting |
| 00:20:12 | 6 | it, and asking in return that it be given to him. |
| 00:20:18 | 7 | But, Judge Flanagan, I go further.  Because |
| 00:20:20 | 8 | in paragraph 10 of the Presentence Report, this |
| 00:20:22 | 9 | Defendant talks about his own hands-on contact with a |
| 00:20:25 | 10 | small child, a two-year-old that he claims he -- or |
| 00:20:29 | 11 | brags, I submit, had the child give him oral sex.  A two |
| 00:20:36 | 12 | year old.  We don't have images; we were not able to |
| 00:20:38 | 13 | find those images of the child.  But, Judge Flanagan, |
| 00:20:41 | 14 | this Defendant clearly, I submit, based on his own |
| 00:20:45 | 15 | statements, his hidden statements, hidden from his |
| 00:20:48 | 16 | family, from his friends, from everyone, clearly |
| 00:20:50 | 17 | indicates someone who has a serious, serious problem. |
| 00:20:56 | 18 | And one in which he presents someone who, I submit, is |
| 00:20:59 | 19 | very dangerous. |
| 00:21:02 | 20 | And I think then further -- it's further |
| 00:21:06 | 21 | expanded on when you have in paragraph 11, ten separate |
| 00:21:09 | 22 | boys that this Defendant solicited, had them send him |
| 00:21:16 | 23 | images of themselves, videos of themselves masturbating, |
| 00:21:21 | 24 | doing all kinds of things to themselves for this |
| 00:21:23 | 25 | Defendant's sexual gratification. |

00:21:25  1        So we don't have someone who merely -- and I

00:21:28  2   know the Court has done a lot of these cases where

00:21:30  3   merely just downloading images.  He is actively

00:21:33  4   soliciting and encouraging the manufacture of child

00:21:37  5   pornography, which he pled guilty to.

00:21:39  6        So I reject the doctor's evaluation or

00:21:42  7   conclusion that he does not pose a risk of reoffending

00:21:47  8   and has a low level of recidivism.  This is someone who

00:21:51  9   over a lengthy period of time has committed multiple

00:21:55  10  acts on multiple children, not only through soliciting

00:21:58  11  others to do it, but soliciting the children directly,

00:22:01  12  directly asking them, reaching out to them, and

00:22:05  13  encouraging them to produce child pornography for his

00:22:09  14  own sexual pleasure.

00:22:10  15        So, Judge Flanagan, we do not believe a

00:22:12  16  variance is appropriate here.  We would ask the Court to

00:22:15  17  sentence him to a guideline sentence, which is 360

00:22:18  18  months.  We'd ask the Court to impose a lengthy

00:22:21  19  supervised period after release; I would ask for life

00:22:25  20  supervision.  That would be the Government's position.

00:22:28  21  Thank you.

00:22:29  22             THE COURT:  Did you want to respond?

00:22:31  23             MR. MANNING:  No, Your Honor.

00:22:32  24             THE COURT:  Does your client want to say

00:22:33  25  anything?

| | | |
|---|---|---|
| 00:22:33 | 1 | MR. MANNING:  Yes. |
| 00:22:34 | 2 | THE DEFENDANT:   Yes, Your Honor. |
| 00:22:38 | 3 | Your Honor, I submitted a letter to you |
| 00:22:42 | 4 | personally a couple weeks ago.  And I wanted to show you |
| 00:22:48 | 5 | who I truly was as a person, not for what I am standing |
| 00:22:51 | 6 | here today for. |
| 00:22:55 | 7 | I have been raised in a Christian family my |
| 00:22:58 | 8 | entire life.  They've always put me in a Christian |
| 00:23:03 | 9 | school, making sure I had the best education as |
| 00:23:06 | 10 | possible.  And during that time in the sixth grade I |
| 00:23:08 | 11 | felt called to be a worship leader.  I knew that was my |
| 00:23:12 | 12 | calling in life.  I knew that's what I wanted to do for |
| 00:23:15 | 13 | the rest of my life was to be a worship leader and lead |
| 00:23:18 | 14 | people into the presence of the Lord. |
| 00:23:22 | 15 | And during that time in middle school I was |
| 00:23:25 | 16 | bullied.  I had a cyst on the side of my head that had |
| 00:23:30 | 17 | to have multiple surgeries.   I had to be put down for |
| 00:23:33 | 18 | it and everything.  And during that time I was |
| 00:23:35 | 19 | struggling as an individual.  People were making fun of |
| 00:23:39 | 20 | me because I had to have a bandage wrapped around my |
| 00:23:43 | 21 | head all throughout middle school.  And through that |
| 00:23:45 | 22 | bullying it made me very introverted.  I didn't know who |
| 00:23:51 | 23 | to trust at the time.  The only people I knew who to |
| 00:23:54 | 24 | trust was my church family and my parents.   During that |
| 00:23:57 | 25 | time I felt -- during that time at church I felt that's |

00:24:03 1  where my true friends were; that's where I felt

00:24:06 2  comfortable.  I started leading worship for the youth.

00:24:09 3  I started leading worship for corporate congregation.

00:24:15 4  And I knew that was my purpose in life.

00:24:20 5       And then even though I was raised in a

00:24:23 6  Christian school, you all are exposed to certain things,

00:24:27 7  and a lot of people don't act very Christian like in a

00:24:30 8  Christian school.  People were talking about pornography

00:24:33 9  during that time, and I was introduced to pornography in

00:24:36 10 the eighth grade for the very first time.  And during

00:24:38 11 that time I felt awful; I felt horrible for what I did.

00:24:42 12 I can't explain the feeling that I felt.  I just

00:24:45 13 remember sitting down and crying because I couldn't

00:24:47 14 believe what I was doing.  I never wanted to view women

00:24:51 15 as an item, as a tool, as an object.  And I know later

00:24:56 16 in life that's what it became.  Pornography just began

00:25:00 17 to be -- it became such an addiction that the more and

00:25:05 18 more I viewed it, the less and less -- you know, I guess

00:25:10 19 in terms of satisfied, I was trying to find satisfaction

00:25:14 20 in all of the wrong areas.  And it had progressively

00:25:18 21 gotten worse.

00:25:19 22      At Liberty I was preparing to be a worship

00:25:22 23 leader because I knew that was my calling.  I knew that

00:25:25 24 was my calling in life and that's what I was supposed to

00:25:28 25 be doing for the rest of my life is to lead people and

00:25:30  1   to help people and not to hurt people.

00:25:31  2          But during sophomore year at college is when

00:25:34  3   I was introduced to child pornography for the first

00:25:37  4   time.  I didn't ask for it.  Someone just sent me all

00:25:39  5   these images.  And then now having them, I didn't know

00:25:43  6   what to do.  I felt trapped.  It progressively got

00:25:47  7   worse.  I didn't know who to go to.  I kept -- yes, I

00:25:51  8   kept it concealed from everyone because I felt like if I

00:25:54  9   would tell someone, I was letting everyone down.

00:25:57  10          You can ask my friends.  My life seemed

00:26:01  11  awesome; it almost seemed perfect.  I was -- in better

00:26:05  12  terms, on cloud nine is what people would say.  I was

00:26:08  13  having job opportunities at different churches to be a

00:26:14  14  youth worship leader, to be a worship leader.  I knew

00:26:19  15  that's what I was supposed to be doing.

00:26:21  16          But I just got caught up in something that I

00:26:21  17  felt like I could not tell anyone because I knew it

00:26:25  18  would have such a detrimental effect to the person I

00:26:29  19  told because this is something -- it's not me.  It's

00:26:34  20  truly not me.

00:26:35  21          I feel like, standing here, every day that

00:26:38  22  I'm behind bars is a day wasted that I could be out

00:26:41  23  there truly helping someone with the condition that I

00:26:45  24  have; or, in better terms, that I had.

00:26:48  25          Yes, there will be temptations.  I get that.

| | | |
|---|---|---|
| 00:26:53 | 1 | There is temptations.  Everyone struggles with |
| 00:26:55 | 2 | temptations, whether it is drugs, whether it is alcohol, |
| 00:27:00 | 3 | whether it is sex, whether it is pornography.  Everyone |
| 00:27:02 | 4 | struggles with temptations.  I'm not saying that I don't |
| 00:27:05 | 5 | need help whatsoever.  I'm open, you know, to receive |
| 00:27:08 | 6 | help.  Because I know there is temptations and will be |
| 00:27:12 | 7 | temptations throughout the rest of my life. |
| 00:27:14 | 8 | Do I think -- you know, have I had enough |
| 00:27:18 | 9 | time to reflect on what I've done?  Yes.  I truly |
| 00:27:21 | 10 | believe with everything in me that I am not going back |
| 00:27:24 | 11 | to who I was.  And like I said previously, every day |
| 00:27:28 | 12 | that I am incarcerated I feel like it's a day wasted |
| 00:27:31 | 13 | that I could truly help someone. |
| 00:27:36 | 14 | Looking at all the victims that I have |
| 00:27:41 | 15 | communicated with, they were struggling with the same |
| 00:27:45 | 16 | thing, you know.  And I truly believe I can help someone |
| 00:27:50 | 17 | like me who is desperately trying to get out of it.  I |
| 00:27:53 | 18 | was trying to get out of it.  I didn't know who to go |
| 00:27:56 | 19 | to.  I was looking ways up to get out of it.  But I know |
| 00:27:59 | 20 | there's someone that desperately needs to hear my story, |
| 00:28:03 | 21 | needs to hear my testimony before they're standing in |
| 00:28:05 | 22 | the same exact place I'm standing today facing 15 to 30 |
| 00:28:09 | 23 | years of their life.  And I truly believe I can help |
| 00:28:14 | 24 | that person.  I believe I can help multiple people, not |
| 00:28:20 | 25 | just one.  I know I can make a difference given the |

00:28:25 1    opportunity.

00:28:34 2           THE COURT: All right. Thank you.

00:28:38 3           MR. ONTJES: Judge, may I respond briefly?

00:28:39 4          I'm sorry, but from what the Defendant just

00:28:42 5    said, he still doesn't get it. I submit he's still in

00:28:46 6    denial. When he says the victims were struggling with

00:28:50 7    the same things; they were children. He solicited them.

00:28:55 8    He's an adult man. They didn't know any better when he

00:28:59 9    chatted with them, secured their confidence, and then

00:29:02 10    got them to send nude pictures of themselves.

00:29:05 11         For him to say: I didn't tell anyone

00:29:07 12    because I was afraid of the detrimental effect on that

00:29:11 13    person. No. He didn't tell anyone because of the

00:29:14 14    detrimental effect on himself. He knew if he told

00:29:18 15    someone what he had been doing for years it would lead

00:29:20 16    to this: his incarceration.

00:29:24 17         So, Your Honor, I'm sorry, but when the

00:29:26 18    Defendant claims he's sorry, but yet doesn't apologize

00:29:30 19    to any of the victims, and presents himself as a victim;

00:29:34 20    again, Judge Flanagan, I don't believe a variance is

00:29:37 21    appropriate here and would ask the Court to impose a

00:29:41 22    guideline sentence. Thank you.

00:30:33 23         THE COURT: Well, it is concerning to me to

00:30:36 24    hear the Defendant talk about his victims struggling

00:30:44 25    with the same issues that he has. That's trying to put

00:30:54  1   a mantle on top of those children that they don't

00:30:59  2   deserve.

00:31:04  3         I think what shines throughout is that you

00:31:08  4   are a very naive young man, and I think that shows today

00:31:16  5   in your statements to me.

00:31:24  6         There are a lot of people that think a lot

00:31:26  7   of you and I think were blindsided to learn what you had

00:31:31  8   done.  You were very skillful in keeping it secretive.

00:31:42  9   And I don't think today standing here you really realize

00:31:45  10  fully the consequences of your actions.

00:31:53  11        Your concern about wanting to help people

00:31:55  12  and that each day you're in prison is a day where you

00:31:58  13  can't help people, at first blush is very appealing, but

00:32:06  14  I think it almost masks your conduct and your

00:32:09  15  understanding of it to think that today you could help

00:32:15  16  people.  You have to help yourself and realize fully

00:32:22  17  what you've done and learn a set of skills that when

00:32:27  18  you're out in society, and you can get to this

00:32:31  19  material -- so sadly -- so easily, that you don't, and

00:32:35  20  that you're not harmful to children.

00:32:38  21        The scars on those young boys, they'll last

00:32:42  22  a lifetime, knowing that they were encouraged and that

00:32:46  23  they agreed to provide you with these images that live

00:32:51  24  on in the internet.  That's not something you can shake

00:32:57  25  aside very easily.

00:33:02  1          It's a terribly long sentence that you face.

00:33:06  2  Thirty years is the advice I receive.  The Court's

00:33:11  3  sentence needs to discourage this type of conduct,

00:33:15  4  promote respect for the law.  And what I really linger

00:33:19  5  on with you is the factor under law, the need to protect

00:33:23  6  the public, and also in your case the need for

00:33:29  7  treatment.

00:33:33  8          You're a talented person in the area of

00:33:35  9  music, and you have deep-rooted Christian beliefs and

00:33:42  10  feelings and knowledge and understandings.  And there

00:33:46  11  are a lot of people that you've impressed along the way

00:33:50  12  who I know are crushed.

00:33:54  13          Well, Mr. Milam, I've considered the advice

00:33:57  14  of the guidelines and the factors set forth in 18 United

00:34:01  15  States Code, Section 3553.  I believe a sentence of 26

00:34:06  16  years in this case is a sentence that's sufficient but

00:34:09  17  not greater than necessary.  That reflects a small

00:34:15  18  variance which I think is warranted, and the sentence is

00:34:20  19  312 months.  It's a very long sentence.  And it's a very

00:34:27  20  horrible set of crimes that are all captured in Count 1,

00:34:31  21  manufacture of child pornography.

00:34:35  22          Now, you're going to be supervised for the

00:34:37  23  rest of your life.  You can't break any law, possess a

00:34:40  24  weapon or drugs illegally.  There are some other

00:34:43  25  standard conditions and some special ones.

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
| 00:34:45 | 1  | Before I get to that I'm going to offer my |
| 00:34:48 | 2  | recommendation to the Bureau of Prisons for you.  I'm |
| 00:34:51 | 3  | going to recommend Butner.  I think it would be a very |
| 00:34:54 | 4  | good place for you.  The Bureau of Prisons has very |
| 00:34:56 | 5  | skilled medical professionals at that facility, really |
| 00:35:01 | 6  | one of the best in the country for treatment of this |
| 00:35:06 | 7  | type of issue.  So I'm recommending you to Butner, and |
| 00:35:09 | 8  | I'm recommending you for sex offender treatment.  I'm |
| 00:35:15 | 9  | recommending you for further education -- I hope you can |
| 00:35:19 | 10 | finish that college degree -- and vocational training. |
| 00:35:24 | 11 | And I'm recommending you for mental health treatment. |
| 00:35:27 | 12 | That may well be integrated into sex offender treatment, |
| 00:35:31 | 13 | but I think you need some mental health treatment, quite |
| 00:35:36 | 14 | clearly. |
| 00:35:38 | 15 | Now, you don't have the ability to pay a |
| 00:35:40 | 16 | fine in the guideline range, which is $50,000 to |
| 00:35:46 | 17 | $250,000, but do you have the ability to pay a $4,000 |
| 00:35:49 | 18 | fine, so I'm imposing that. |
| 00:35:51 | 19 | There's a $100 special assessment. |
| 00:35:55 | 20 | Now, when you get out of prison -- and your |
| 00:35:58 | 21 | good behavior can take close to two months a year off |
| 00:36:01 | 22 | the sentence, and I expect that you will follow the |
| 00:36:04 | 23 | rules of the prison system and that you will be eligible |
| 00:36:08 | 24 | for that.  And you'll get credit for time served. |
| 00:36:15 | 25 | But as mentioned, when you're released from |

00:36:17  1  prison, you'll be supervised for the rest of your life.

00:36:20  2  You'll comply with the mandatory and standard conditions

00:36:23  3  that have been approved by the Judicial Conference and

00:36:26  4  contained in the Court's judgment, as well as the

00:36:28  5  additional conditions adopted by this Court, and the

00:36:31  6  following conditions which the Court finds appropriate

00:36:34  7  after consideration of the relevant sentencing factors;

00:36:39  8  that is, the nature of the offense, your use of a

00:36:42  9  computer, and the compelling need for substance and sex

00:36:45  10 offender treatment:

00:36:46  11          You're going to submit to psychosexual

00:36:53  12 evaluation by a qualified mental health professional.

00:36:56  13          You're going to participate in sex offender

00:36:58  14 treatment when you're released.

00:37:00  15          You're going to submit to physiological

00:37:02  16 testing.

00:37:03  17          Your residence and your employment must be

00:37:05  18 preapproved by the probation office.

00:37:07  19          You can't possess any material depicting or

00:37:09  20 describing child pornography or simulated child

00:37:13  21 pornography or go to places where such material can be

00:37:16  22 accessed, obtained, or viewed.

00:37:20  23          You'll have to comply with the requirements

00:37:23  24 of the Sex Offender Registration and Notification Act.

00:37:25  25          You'll not associate or have verbal,

00:37:28  1  written, telephonic, or electronic communication with

00:37:31  2  any person under the age of 18 unless the parent or

00:37:36  3  legal guardian is present, on the condition that you've

00:37:39  4  notified them of your conviction and prior history, and

00:37:43  5  you've got specific written approval from the probation

00:37:46  6  office.  That doesn't include children, people under the

00:37:50  7  age of 18 that you would associate with in the ordinary

00:37:54  8  terms the of commerce like ticket vendors or fast food

00:38:01  9  workers or the like.

00:38:03  10            You can't be 1,000 feet of any area where

00:38:08  11  minors frequently congregate.  That includes parks,

00:38:12  12  school property, playgrounds, and the like.

00:38:17  13            You can't purchase or use a computer or

00:38:20  14  device that's linked to the internet unless the

00:38:23  15  probation officer approves.

00:38:26  16            Your person, your house, your motor vehicle

00:38:29  17  can all be searched unannounced to determine your

00:38:32  18  compliance with the Court's judgment.  That would

00:38:34  19  include searching any computer or computer equipment.

00:38:41  20            You'll consent to the installation of

00:38:43  21  systems or software that allow the probation office to

00:38:46  22  monitor your computer if you're using one by permission.

00:38:51  23            You can't possess any tools that would

00:38:53  24  defeat the computer review by the probation officer.

00:38:59  25            And again, your house, your person, your

residence, your motor vehicle can all be searched without a warrant.

You'll cooperate in the collection of DNA.

I don't think you're a risk for substance abuse, so I'm suspending the drug testing condition.

There's a $100 special assessment which is due immediately.

And again, the fine of $4,000 is due immediately, but I'm going to waive the interest on the fine.

Now, it's recommended that I order you to pay into the Justice for Victims of Trafficking Act of 2015 Fund -- the statutory provision is $5,000, and I am going to order you to pay into that fund.

MR. MANNING:  May I speak to that point?  I believe that if a person is not -- is indigent, I believe the Court can waive that $5,000.  And he's not -- but for his parents, he would be here represented by appointed counsel.

THE COURT:  What says the Government?

MR. ONTJES:  Well, Judge Flanagan, I'm just looking at his financial assets, paragraph 31.  I'll defer to the Court.  His net worth is $4,700.

THE COURT:  Well, I'm going to do this.  I'd rather you pay into that fund than pay the fine.  So

00:41:01 1  I'll set aside the $4,000 fine, but I want you to pay

00:41:08 2  into that fund $4,000.  We'll do it that way.  Any

00:41:17 3  questions?

00:41:18 4          Any other matters?

00:41:21 5          Obviously your objections are noted on the

00:41:23 6  record, but is there anything else that you would like

00:41:25 7  to note that I -- you would like me to know that I

00:41:30 8  should take into consideration before I impose this

00:41:32 9  finally?

00:41:34 10         MR. MANNING:  No, not as to that.

00:41:36 11         THE COURT:  Okay.  Well, thank you for your

00:41:40 12 really significant efforts in collecting the material

00:41:43 13 that was helpful to me in deciding a variance was

00:41:48 14 appropriate.

00:41:49 15         All right.  Mr. Ontjes?

00:41:50 16         MR. ONTJES:  Nothing further.  Thank you,

00:41:52 17 Your Honor.

00:41:52 18         THE COURT:  You can appeal, Mr. Milam.

00:41:56 19 You've got 14 days to do that, 14 days from the date

00:41:59 20 that the judgment goes on the docket.  Now, you did

00:42:02 21 enter into a plea agreement, and it's my understanding

00:42:04 22 that you had waivers in it of your rights to appeal.

00:42:08 23 And these waivers are generally enforceable.  But if for

00:42:12 24 some reason you believe they're not, again, you can take

00:42:16 25 that up with the Court above.  But you've got to move

```
00:42:20  1   quickly, 14 days from the date that the judgment goes on
00:42:22  2   the docket.
00:42:23  3            Again, if you cannot afford an attorney, you
00:42:26  4   can apply for permission to be represented for free.
00:42:29  5   And if you request, the clerk will fill out the appeal
00:42:32  6   paperwork for you.
00:42:34  7            Sir, do you have any questions -- and feel
00:42:36  8   free to talk to Mr. Manning first -- about the Court's
00:42:39  9   judgment or about your appeal rights?
00:42:46 10            THE DEFENDANT:  Sorry.  Repeat the question.
00:42:48 11            MR. MANNING:  May I, Your Honor?
00:42:57 12            (Discussion had off the record between the
00:42:57 13   Defendant and defense counsel.)
00:42:57 14            THE DEFENDANT:  No, ma'am.
00:42:59 15            MR. MANNING:  He answered none, Your Honor.
00:43:00 16            THE COURT:  Well, I'll put you back in the
00:43:03 17   custody of the Marshal's Service.
00:43:05 18            MR. MANNING:  May I raise one other matter?
00:43:07 19   With respect to appeal, Your Honor, I would ask that the
00:43:11 20   Defendant be provided with an application for indigent
00:43:15 21   counsel while he's here in the courthouse before he -- I
00:43:19 22   don't know if he's going back to Virginia or where ever.
00:43:22 23   But I would ask that he be permitted to fill that out
00:43:24 24   because he may need assigned counsel for appeal.
00:43:27 25            THE COURT:  Mr. Cantafio, can you address
```

| | | |
|---|---|---|
| 00:43:30 | 1 | that while the Defendant is in this courthouse, provide |
| 00:43:33 | 2 | him with the paperwork? |
| 00:43:37 | 3 | THE PROBATION OFFICER:  For indigent |
| 00:43:38 | 4 | counsel? |
| 00:43:38 | 5 | THE COURT:  Mr. Manning has asked that he |
| 00:43:41 | 6 | fill out again another affidavit of his indigency. |
| 00:43:46 | 7 | THE PROBATION OFFICER:  Yes, Your Honor. |
| 00:43:47 | 8 | MR. MANNING:  Thank you, Your Honor. |
| 00:43:48 | 9 | THE COURT:  Is there anything else? |
| 00:43:50 | 10 | MR. MANNING:  No. |
| 00:43:50 | 11 | THE COURT:  Thank you all. |
| | 12 | (Concluded at 10:48 a.m.) |
| | 13 | - - - |
| | 14 | |
| | 15 | **C E R T I F I C A T E** |
| | 16 | |
| | 17 | I certify that the foregoing is a correct transcript |
| | 18 | from the record of proceedings in the above-entitled |
| | 19 | matter. |
| | 20 | |
| | 21 | /s/ Tracy L. McGurk_____                    ___5/23/2018___ |
| | 22 | Tracy L. McGurk, RMR, CRR                    Date |
| | 23 | |
| | 24 | |
| | 25 | |