```
 1              UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NORTH CAROLINA
 2                     EASTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,-    Docket No. 5:17-cr-265-FL-1
                              -
 5      Plaintiff,            -    New Bern, North Carolina
                              -    January 9, 2018
 6         v.                 -    Motion Hearing
                              -
 7   JUSTIN COLE MILAM,       -
                              -
 8      Defendant.            -
     -------------------------------
 9
                   TRANSCRIPT OF MOTION HEARING
10        BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
                 UNITED STATES DISTRICT JUDGE.
11
     APPEARANCES:
12
     For the Plaintiffs:  United States Attorneys' Office
13                        By:  Ethan A. Ontjes
                          310 New Bern Avenue, Suite 800
14                        Raleigh, NC 27601
                          (919) 856-4500
15
     For the Defendant:   Manning Law Firm
16                        Thomas Courtland Manning
                          1312 Annapolis Drive
17                        Suite 201
                          Raleigh, NC 27608
18                        (919) 834-3499

19   Court Reporter:      Tracy L. McGurk, RMR, CRR
                          413 Middle St.
20                        New Bern, NC 28560
                          (419) 392-6626
21

22

23

24   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
25
```

1          (Commenced at 11:10 a.m.)

2          THE COURT:  Mr. Milam, my name is Judge

00:00:02   3  Flanagan.  This is the time the Court has set aside to

00:00:04   4  sentence you for manufacturing child pornography.  Have

00:00:08   5  you read the presentence report?

00:00:09   6          THE DEFENDANT:  Yes, Your Honor.

00:00:10   7          THE COURT:  Have you had enough time to

00:00:11   8  prepare with Mr. Manning for sentencing today?

00:00:14   9          THE DEFENDANT:  Yes, Your Honor.

00:00:15  10          THE COURT:  You're named in a one-count

00:00:17  11  criminal information.  The offense conduct, as described

00:00:21  12  in the presentence report, puts you in contact with an

00:00:25  13  individual named Christopher Coates, a registered sex

00:00:30  14  offender, residing in Carpinteria, California back in

00:00:34  15  June of 2015.  As I read the presentence report, I

00:00:39  16  gather that on one day, April 15 of 2015, you exchanged

00:00:46  17  77 messages with Mr. Coates.  And of those 77 messages,

00:01:05  18  34 image files depicting child pornography were

00:01:09  19  exchanged among those messages between you and Mr.

00:01:15  20  Coates.

00:01:19  21          Then in October of 2015 a subpoena was

00:01:26  22  obtained and served.  And as described, eventually it

00:01:38  23  was determined that you were, in fact, the luke.smith25

00:01:46  24  who corresponded with Mr. Coates on April 15 of 2015.

00:01:53  25          Now, it took some time to search your

00:01:57  1   residence.  That happened on January 12 of 2017.  And

00:02:03  2   you acknowledged that this was your account, and that

00:02:08  3   you had begun trading child pornography about two years

00:02:12  4   earlier, which would put you back in 2015, that you

00:02:17  5   periodically deleted your child pornography collection

00:02:20  6   only to began again.  You acknowledged having images of

00:02:25  7   child pornography on your smart phone to include images

00:02:30  8   of toddlers being sexually abused.

00:02:34  9          Your smart phone was seized.  An external

00:02:38  10  hard drive was located, and this hard drive also

00:02:42  11  revealed images of child pornography.  So the probation

00:02:49  12  office says that all total, there are 986 images of

00:02:56  13  child pornography and 117 videos.  And some of those

00:02:59  14  images portray sadistic or masochistic conduct.  For

00:03:04  15  example, one image depicted a nude female between the

00:03:07  16  ages of five and nine with her arms and legs bound by a

00:03:12  17  rope bent over the back of a chair.  Sixty-nine images

00:03:16  18  and one video in your collection depicted sexual abuse

00:03:20  19  of infants and/or toddlers.

00:03:25  20          The investigation recovered numerous chat

00:03:29  21  conversations between you and other users of this

00:03:33  22  service called Kik, which is used fairly frequently to

00:03:39  23  exchange child pornography.

00:03:42  24          130 Kik Messenger user accounts were

00:03:46  25  identified as receiving or sharing child pornography

00:03:50  1   with you.  Most of those accounts were located overseas.

00:04:00  2                Probation highlights some of the more

00:04:06  3   horrific exchanges including that you acknowledge

00:04:13  4   sexually abusing a three-year-old child and a

00:04:18  5   two-year-old child.  However, despite your admissions of

00:04:22  6   sexual abuse of multiple children, the investigation

00:04:26  7   didn't uncover any evidence of hands-on offenses.

00:04:32  8                Then in the presentence report in paragraph

00:04:35  9   11 it continues to describe ten child victims, separate

00:04:41  10  victims that you communicated with and encouraged to

00:04:45  11  send you images of their bodies classified as child

00:04:52  12  pornography.  These victims are referred to as between

00:04:56  13  the ages of 13 and 17.  And mostly the images have to do

00:05:04  14  with them sending you pictures of their erect penises.

00:05:12  15               Now, your family background is given to me,

00:05:16  16  and it's described in the letters that have been

00:05:18  17  presented to the Court as being a very sheltered

00:05:22  18  existence.  You have been very involved with your church

00:05:25  19  over the years and contributed to that community.  You

00:05:30  20  went to Liberty College, and I believe you were in your

00:05:34  21  senior year when you were arrested.

00:05:36  22               THE DEFENDANT:  Yes, ma'am.

00:05:37  23               THE COURT:  I'm not sure how well you

00:05:40  24  performed at Liberty University except that you need to

00:05:43  25  complete one more semester in order to earn a bachelor

00:05:47   1    of science.

00:05:53   2              The scoring takes over the bulk of this

00:05:57   3    report.  It's very complicated and results in a total

00:06:02   4    score which is to say far in excess of the total offense

00:06:09   5    level category that's the highest under the guidelines;

00:06:15   6    that's a 43.  I think it ended up being -- well, it

00:06:25   7    ended up being a 45; 48, then three points are taken off

00:06:29   8    for acceptance of responsibility.  But because you can't

00:06:32   9    go higher than a 43, that's where we are.

00:06:37   10             Now, under the guidelines somebody in a

00:06:42   11   Criminal History Category of I, which you are -- it's

00:06:45   12   the most favorable category because you haven't had any

00:06:48   13   contacts with the criminal justice system -- would be

00:06:52   14   sentenced to life in prison.  But you're charged under a

00:06:55   15   statute that provides for not less than 15 years in

00:06:59   16   prison or more than 30 years.  So the guidelines tell

00:07:04   17   the Court to consider a 30-year or 360-month term of

00:07:08   18   incarceration.

00:07:10   19             Your behavior can be supervised for not less

00:07:13   20   than five years nor more than the rest of your life.

00:07:16   21             The fine could be as much as a quarter of

00:07:18   22   $1 million.  The guidelines suggest a range that starts

00:07:20   23   at $50,000.

00:07:21   24             There's a $100 special assessment.

00:07:27   25             Now, I read your memorandum, Mr. Manning,

| | | |
|---|---|---|
| 00:07:30 | 1 | and you were hopeful that the government would be filing |
| 00:07:32 | 2 | a motion, but I don't have one in front of me. |
| 00:07:34 | 3 | MR. MANNING:  I was informed shortly after I |
| 00:07:36 | 4 | filed the motion that the government was not going to be |
| 00:07:40 | 5 | filing a 5K1.1 motion. |
| 00:07:49 | 6 | THE COURT:  So I have a couple questions. |
| 00:07:55 | 7 | These ten child victims, how did you find them? |
| 00:08:01 | 8 | THE DEFENDANT:  It was through a -- it was |
| 00:08:04 | 9 | through a website called Enable, and it essentially |
| 00:08:11 | 10 | partners you with a random person.  Then that's how I |
| 00:08:14 | 11 | got in contact with those ten. |
| 00:08:18 | 12 | THE COURT:  Does that conform to the |
| 00:08:20 | 13 | government's understanding? |
| 00:08:21 | 14 | MR. ONTJES:  Yes, Your Honor.  Detective |
| 00:08:21 | 15 | Omegle can explain this better. |
| 00:08:27 | 16 | THE COURT:  How do you spell that? |
| 00:08:27 | 17 | MR. ONTJES:  Omegle is O-m-e-g-l-e. |
| 00:08:32 | 18 | And it's a chat form, Judge Flanagan, that |
| 00:08:34 | 19 | allows you to go into it; you put in certain parameters, |
| 00:08:38 | 20 | topics that you're interested in talking about or |
| 00:08:41 | 21 | meeting people interested in the same thing.  In this |
| 00:08:44 | 22 | case young boys primarily that the Defendant was |
| 00:08:46 | 23 | interested in.  Once he met these people, as he stated, |
| 00:08:50 | 24 | anonymously, he then went offline, if you will, onto a |
| 00:08:55 | 25 | Kik account where he then began trading and, as the |

00:08:58  1    Court's already outlined in paragraph 11, began

00:09:01  2    soliciting them to send him child pornography of

00:09:05  3    themselves.

00:09:06  4              THE COURT:  And he was doing that between

00:09:08  5    November of 2016 and January of 2017?

00:09:15  6              MR. ONTJES:  Literally the day before the

00:09:16  7    search, Judge Flanagan.

00:09:17  8              THE COURT:  So he's home on college

00:09:19  9    Christmas break?

00:09:20  10             MR. ONTJES:  That's correct.  He was home

00:09:22  11   for the holidays from Liberty University.

00:09:31  12             THE COURT:  Is there a psychological report

00:09:33  13   that I may have overlooked?

00:09:35  14             MR. MANNING:  There is not.

00:09:42  15             THE COURT:  All right.  Well, tell me about

00:09:44  16   his college years.  I don't see much in the submissions

00:09:49  17   that highlight his involvement at Liberty University.

00:09:53  18             MR. MANNING:  Your Honor, his major was

00:09:59  19   music.  He also had particular interest in leading

00:10:06  20   prayer sessions.  And his stated intention and his

00:10:12  21   current intention is to enter the ministry both for

00:10:16  22   music and as a prayer leader.  The attachment to his

00:10:23  23   father's letter in the materials is accurate with

00:10:28  24   respect to what his -- what he had been doing.  His

00:10:33  25   grades were a little bit above average, and he was

00:10:36　1　heading for graduation this past spring when he was

00:10:40　2　arrested.

00:10:43　3　　　　　　　THE COURT:  Okay.  So that's the resumé

00:10:45　4　you're referring to?

00:10:47　5　　　　　　　MR. MANNING:  Yes, Your Honor.

00:10:57　6　　　　　　　THE COURT:  Well, I guess this is a young

00:11:07　7　man who is looking at a lot of time in prison.  What do

00:11:10　8　you think is the appropriate sentence?

00:11:12　9　　　　　　　MR. MANNING:  Your Honor, I'll preface my

00:11:18　10　recommendation by saying this:  I've been working with

00:11:20　11　him for a year.  I've talked to him probably more than

00:11:24　12　20 times about the offense, about the content of the

00:11:31　13　material that the investigation showed.  I've worked

00:11:35　14　with Detective Ouellette, with Justin, with him trying

00:11:40　15　to give law enforcement more information so that

00:11:45　16　detective Ouellette could continue and deepen his

00:11:49　17　investigation.  And I've spoken to the people who have

00:11:55　18　written letters.  I spent time talking with his parents.

00:12:00　19　And the trajectory of his life, with the exception of

00:12:06　20　the crimes he's committed, has been absolutely straight

00:12:11　21　and straight vertical from the time he was very small

00:12:17　22　until the time of his arrest and even while he's been in

00:12:21　23　jail in Wake County these past 12 months.  He has worked

00:12:29　24　toward being in the ministry.  And the resumé shows that

00:12:35　25　when he was younger, the school he went to, the North

| | | |
|---|---|---|
| 00:12:39 | 1 | Raleigh Christian Academy, also at Liberty University, |
| 00:12:44 | 2 | on breaks and in the summertimes he was always being an |
| 00:12:48 | 3 | intern at a church, working with the minister.  The |
| 00:12:51 | 4 | letters that Your Honor has reviewed show that that's |
| 00:12:54 | 5 | been his primary focus. |
| 00:12:58 | 6 | The most telling of the letters I think is |
| 00:13:01 | 7 | the second one in the brief, Your Honor, from Jill Davis |
| 00:13:07 | 8 | describing an event.  She's known him for years, and |
| 00:13:12 | 9 | they were riding somewhere on a trip.  They stop at a |
| 00:13:15 | 10 | rest area.  He's 19 years old, which is the same |
| 00:13:18 | 11 | timeframe as when these interfaces with these young boys |
| 00:13:22 | 12 | on the internet occurred.  He had no idea what a rest |
| 00:13:27 | 13 | area was.  And there are three or four other letters |
| 00:13:31 | 14 | which describe him in terms of when he was younger and |
| 00:13:34 | 15 | befriending their family friends' children who were |
| 00:13:37 | 16 | moving into town or going to school with him that he was |
| 00:13:41 | 17 | naive.  And throughout this past year that has been a |
| 00:13:49 | 18 | profound impression on me is that he is naive.  He's |
| 00:13:54 | 19 | still naive with respect to the enormity of what he's |
| 00:14:00 | 20 | facing and the enormity of what has happened in this |
| 00:14:03 | 21 | other life that he leads that apparently has not crossed |
| 00:14:06 | 22 | over into what his plan is for himself.  I mean, it |
| 00:14:11 | 23 | is -- I've represented thousands of people, and this is |
| 00:14:16 | 24 | almost a unique situation for me because there's usually |
| 00:14:20 | 25 | a bridge somewhere in the thinking or in the actions of |

00:14:26  1  people I represent where the regular course of their

00:14:30  2  lives becomes connected with and goes along parallel and

00:14:36  3  intertwined with their criminal conduct.  Here, what he

00:14:40  4  did over a period of three or four years is completely

00:14:47  5  separated, as far as I can tell, from anything that had

00:14:50  6  to do with his education, with his schooling, with his

00:14:53  7  relationships with his peer or older people.  There's a

00:15:00  8  line down the middle that doesn't seem to connect at any

00:15:03  9  point that I've been able to determine.

00:15:07  10             And I looked at a lot of the material.

00:15:09  11  Detective Ouellette, when I was doing my due diligence,

00:15:13  12  taking me through some of this material that's described

00:15:16  13  in the presentence report, it's completely foreign to

00:15:21  14  what everybody that knows him well or thought they knew

00:15:24  15  him well and what I've been able to determine from

00:15:27  16  representing him for over a year.

00:15:29  17             Do I think that he needs treatment?

00:15:32  18             Absolutely.  Evaluation and treatment for

00:15:35  19  this.

00:15:36  20             And he's explained to me how he became

00:15:39  21  involved with pornography and then ultimately ended up

00:15:42  22  in child pornography.  How he walked away it from two or

00:15:47  23  three times.  And it's referenced, I believe, in the

00:15:51  24  presentence report where he would erase everything, then

00:15:54  25  return to it.  He did not have the skill set or the

| | | |
|---|---|---|
| 00:15:57 | 1 | tools with which to resist going back to it, but still |
| 00:16:01 | 2 | maintained it completely separately from the rest of the |
| 00:16:05 | 3 | trajectory of his life and his education. |
| 00:16:09 | 4 | Do I think that he's a monster?  In the |
| 00:16:14 | 5 | world that we live in, I've represented monsters, and |
| 00:16:17 | 6 | Your Honor has dealt with monsters.  Do I think he's a |
| 00:16:20 | 7 | monster? |
| 00:16:21 | 8 | No. |
| 00:16:21 | 9 | Do I think there's something that needs to |
| 00:16:24 | 10 | be addressed seriously with him in terms of evaluation |
| 00:16:28 | 11 | and treatment? |
| 00:16:29 | 12 | Yes. |
| 00:16:31 | 13 | Do I think that the public needs to be |
| 00:16:34 | 14 | separated from him for 30 years or more as a result of |
| 00:16:38 | 15 | what he's done? |
| 00:16:40 | 16 | No. |
| 00:16:41 | 17 | But I do think that he needs to be seriously |
| 00:16:46 | 18 | evaluated and treated and have this other part of him |
| 00:16:53 | 19 | identified and erased if possible or brought into |
| 00:16:58 | 20 | control. |
| 00:16:58 | 21 | And then the rest of his life is already on |
| 00:17:02 | 22 | autopilot in terms of what he wants to do.  And we've |
| 00:17:06 | 23 | talked about how he's going to be prohibited from doing |
| 00:17:09 | 24 | a lot of things if he ever regains his freedom in terms |
| 00:17:12 | 25 | of dealing with persons that he wants to counsel because |

| | | |
|---|---|---|
| 00:17:18 | 1 | a lot of them may be children, people underage, and he |
| 00:17:23 | 2 | will not be permitted to do that except under extremely |
| 00:17:29 | 3 | circumscribed circumstances.  Nevertheless, that is what |
| 00:17:33 | 4 | he wants to do.  He wants to go into a ministry as he is |
| 00:17:36 | 5 | able to. |
| 00:17:38 | 6 | And I will say from talking to jail people, |
| 00:17:42 | 7 | jail personnel in Wake County where he's been for the |
| 00:17:45 | 8 | last year, he had a ministry going in his cell block |
| 00:17:50 | 9 | with other prisoners who came to him for advice and |
| 00:17:55 | 10 | counseling and prayer and that he was a beneficial |
| 00:18:00 | 11 | presence in the places where he lived inside the Wake |
| 00:18:05 | 12 | County Jail. |
| 00:18:06 | 13 | I counseled him against having relationships |
| 00:18:09 | 14 | with any other prisoner because inside jails there are |
| 00:18:14 | 15 | always people who are trying to take advantage of or to |
| 00:18:19 | 16 | manipulate in some way. |
| 00:18:20 | 17 | And he said:  Well, thank you very much, but |
| 00:18:22 | 18 | that is not what I'm doing here. |
| 00:18:25 | 19 | And so even now, that's been what -- that's |
| 00:18:29 | 20 | what he's been doing for the last year, not hiding in a |
| 00:18:35 | 21 | corner, not feeling sorry for himself, but continuing in |
| 00:18:39 | 22 | the way that -- I call it the bright side of him, has |
| 00:18:44 | 23 | been planning to do since the beginning. |
| 00:18:52 | 24 | I think that whatever psychologically is |
| 00:18:56 | 25 | wrong or off about him can be addressed with treatment |

| | | |
|---|---|---|
| 00:18:59 | 1 | because everything else from people who know him well, |
| 00:19:03 | 2 | and a lot of them are here behind me today, there are |
| 00:19:06 | 3 | ten or 12 people here that came from Raleigh and New |
| 00:19:10 | 4 | Bern and other places that have written letters and some |
| 00:19:11 | 5 | other folks that wanted to be here, they all say the |
| 00:19:16 | 6 | same thing. |
| 00:19:17 | 7 | THE COURT: Well, do you think that it would |
| 00:19:23 | 8 | be beneficial to your advocacy on behalf of your client |
| 00:19:29 | 9 | to have some additional time to develop this |
| 00:19:36 | 10 | psychological assessment of him before I impose a |
| 00:19:40 | 11 | sentence? |
| 00:19:42 | 12 | MR. MANNING: I would certainly do that. |
| 00:19:52 | 13 | THE COURT: Would there be any objection on |
| 00:19:54 | 14 | the part of the Government if I were to continue the |
| 00:19:56 | 15 | sentencing for the purpose of that assessment being |
| 00:20:00 | 16 | undertaken and a report being provided? |
| 00:20:03 | 17 | MR. ONTJES: Well, Your Honor, obviously the |
| 00:20:04 | 18 | United States is prepared to go forward today; that was |
| 00:20:07 | 19 | our intent. But if the Court wishes to have more |
| 00:20:10 | 20 | information that an evaluation would provide, the |
| 00:20:15 | 21 | government does not object. |
| 00:20:17 | 22 | THE COURT: And the Defendant consents to |
| 00:20:22 | 23 | this? |
| 00:20:22 | 24 | MR. MANNING: Yes. |
| 00:20:22 | 25 | THE DEFENDANT: Yes, ma'am. |

| | | |
|---|---|---|
| 00:20:24 | 1 | THE COURT: I don't know, are you appointed |
| 00:20:25 | 2 | or retained? |
| 00:20:27 | 3 | MR. MANNING: Retained, Your Honor. |
| 00:20:29 | 4 | THE COURT: So you know there are a number |
| 00:20:33 | 5 | of psychologists that provide this type of information? |
| 00:20:36 | 6 | MR. MANNING: Yes. |
| 00:20:37 | 7 | I'll keep the Court informed, keep the |
| 00:20:44 | 8 | government informed as to my progress. |
| 00:20:46 | 9 | THE COURT: I'll set it in 90 days. And if |
| 00:20:49 | 10 | we can get it done sooner than that, I can pull it back |
| 00:20:51 | 11 | in. But I think that would give more than enough time. |
| 00:20:54 | 12 | MR. MANNING: Yes. The only proviso is |
| 00:20:58 | 13 | Judge Howard may have me for four weeks in a difficult |
| 00:21:01 | 14 | case in the next 90 days, But I'll let the Court know. |
| 00:21:05 | 15 | THE COURT: If that happens, we can work |
| 00:21:07 | 16 | around that. |
| 00:21:08 | 17 | MR. MANNING: Thank you. |
| 00:21:09 | 18 | THE COURT: Otherwise, we'll just go ahead |
| 00:21:10 | 19 | for purposes of not losing track of it, put it on the |
| 00:21:13 | 20 | docket for that term in 90 days. But if there's a need, |
| 00:21:17 | 21 | either side has a need to continue it, just let me know. |
| 00:21:20 | 22 | So the report will be shared with the government and |
| 00:21:24 | 23 | filed under seal with the Court. |
| 00:21:25 | 24 | MR. MANNING: Yes. |
| 00:21:27 | 25 | THE COURT: But I don't want to -- you might |

00:21:33 1    well have a right, if you review the report and you

00:21:35 2    determine it doesn't help your advocacy -- I mean, I'm

00:21:39 3    not making this a court order, so maybe we need to kind

00:21:42 4    of talk through this.  But I don't want to override your

00:21:48 5    attorney-client relationship.

00:21:51 6              MR. MANNING:  I'll make that determination,

00:21:53 7    let the Court know one way or the other.

00:21:56 8              THE COURT:  Because your argument returns to

00:21:59 9    this time and time again about psychologically he's

00:22:03 10   not -- he's not a danger; he can be treated.  And so I

00:22:09 11   think for me to fully assess the weight of that

00:22:13 12   argument, I'm giving you the opportunity to have him

00:22:18 13   evaluated.  And I'm giving you the opportunity, if you

00:22:21 14   choose to, to proceed with benefit of that report.

00:22:26 15             MR. MANNING:  Thank you.

00:22:27 16             THE COURT:  So I think that's how I'm

00:22:29 17   leaving it.  Anything else?

00:22:31 18             MR. ONTJES:  No, Your Honor.  Thank you.

00:22:32 19             THE COURT:  It's a very troubling, troubling

00:22:34 20   case.  I did think it was interesting that I didn't hear

00:22:39 21   from anybody at Liberty.  There's no letter you sent me

00:22:44 22   from anybody at Liberty University, right?  If you want

00:22:51 23   to develop that part of your client's history and

00:22:56 24   characteristics, you can supplement your filings.  And,

00:23:01 25   of course, if there's anything else you want me to take

| | | |
|---|---|---|
| 00:23:04 | 1 | into consideration, just get it to me a week before the |
| 00:23:07 | 2 | sentencing when we finally do it. |
| 00:23:09 | 3 | So I'm going to remand you back in custody. |
| 00:23:13 | 4 | You're going to get credit towards any sentence I impose |
| 00:23:17 | 5 | with respect to time served.  Thank you. |
| | 6 | MR. MANNING:  Thank you, Your Honor. |
| | 7 | (Concluded at 11:34 a.m.) |
| | 8 | - - - |
| | 9 | |
| | 10 | **C E R T I F I C A T E** |
| | 11 | |
| | 12 | I certify that the foregoing is a correct transcript |
| | 13 | from the record of proceedings in the above-entitled |
| | 14 | matter. |
| | 15 | |
| | 16 | /s/ Tracy L. McGurk_____               ___8/23/2018___ |
| | 17 | Tracy L. McGurk, RMR, CRR                     Date |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |